IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :        CASE NO. 08-01890

LUIS SOTO RIOS; BRENDA TOSADO                   :
ARBELO D/B/A FERRETEROS SOTO;                   :
FERRETEROS SOTO INC.;                           :
FERRETERIA SOTO INC.                            :        CHAPTER 11

    Debtors                                     :

_____       :

## AMENDED OPINION AND ORDER

Before the court is Luis Soto Rios and Brenda Tosado Arbelo's (hereinafter referred to as "Debtor in Possession") motion requesting Juan Amador (the "Creditor") to be held in contempt (Docket No. 138) for wilfully violating the automatic stay pursuant to 11 U.S.C. §362(a)(3) of the Bankruptcy Code and for failing to abide by this court's orders regarding the turnover of certain estate property. Also, before the court is the related issue of whether Creditor violated the automatic stay pursuant to 11 U.S.C. § 362(a)(3) of the Bankruptcy Code by refusing to surrender certain estate property (Dockets No. 156, p. 128 and No. 87). For the reasons set forth below this court determines that the Creditor violated the automatic stay pursuant to 11 U.S.C. §362(a)(3) of the Bankruptcy Code and thus, Debtor in Possession is entitled to recover actual damages, including costs and attorneys' fees under 11 U.S.C. §362(k) of the Bankruptcy Code. This court also determines that Creditor is not in contempt of this court's orders.

### Facts and Procedural Background

Debtor in Possession filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on March 29, 2008. The 341 meeting of creditors was scheduled for May 5, 2008 (Docket No. 5) and was subsequently continued on May 16, 2008, (Docket No. 12) May 30, 2008 (Docket No. 16) and finalized on June 23, 2008 (Docket No. 24). Debtor in Possession, on May 30, 2008, included Creditor's claim as an unsecured nonpriority claim in its amended Schedule F- Creditors Holding Unsecured Nonpriority claims (Docket No. 22). Debtor in Possession disclosed that the amount of claim was for $1,000.00 and the same was a contingent, unliquidated and disputed debt.

Attorney Damaris Quiñones Vargas ("Attorney Quiñones") on August 1, 2008 filed a notice of appearance on behalf of Creditor in which she requested to be notified of all pending documents and hearings related to this case and to be included in the master address list (Docket No. 50). The Claims Register shows that Creditor on August 1, 2008 filed a proof of claim for an unsecured debt in the amount of $50,000.00, claim number 37-1.

On November 3, 2008 Debtor in Possession filed a motion disclosing its intentions to terminate its business operations and to retain Casas Subastas to expeditiously liquidate the inventory, vehicles and any other movable equipment (Docket No. 65). The court on November 17, 2008 granted the motion and permitted Debtor in Possession to terminate its business operations (Docket No. 75). Subsequently, on November 26, 2008, Debtor In Possession filed a "Notice of Public Sale And Certificate Of Mailing" by which it informed creditors and parties in interest that a public sale would be held on December 6, 2008 at the hardware store located in Carr #2 Quebradillas, Puerto Rico (Docket No. 79).

On November 26, 2008 Attorney Quiñones Vargas filed a motion requesting to withdraw as counsel of record for Creditor due to "unsurpassable differences" and requesting the court to grant Creditor sixty (60) days to obtain new counsel (Docket No. 80). The court on December 1, 2008 granted Attorney Quiñones' withdrawal as Creditor's counselor and granted Creditor sixty (60) days to employ new legal representation (Docket No. 81).

On December 10, 2008 Debtor in Possession filed a motion titled, "Motion Requesting Turnover Of Property Pursuant To The Provision Of Section 542 Of Title 11 USCA And Request For Order To Show Cause For Violation Of Automatic Stay Provisions" informing the court that Gilberto Benitez had bought the red 45 feet long Fruehauf platform at the December 6, 2008 public sale and that such platform was currently under Creditor's possession and the same had not been turned over to Debtor in Possession (Docket No. 87). Furthermore, Debtor in Possession in such motion alleged the following: (i) the red 45 feet long Fruehauf platform is property of the estate; (ii) Creditor's failure to turn over property of the estate may constitute a violation of the automatic stay pursuant to 11 U.S.C. §362(a)(3) of the Bankruptcy Code; and (iii) Creditor's violation of the automatic stay constitutes sufficient grounds for the court to issue an order ordering the Creditor to show cause as

2

to why he should not be held in contempt of the court and be liable for damages (Docket No. 87, pgs. 2-3). On January 14, 2009 the court granted the unopposed Debtor in Possession's motion ordering Creditor to turn over the red 45 feet long Fruehauf platform and ordering the Creditor to show cause within thirty (30) days as to why he should not be found in contempt of court and sanctioned accordingly (Docket No. 107). The court subsequently on January 16, 2009 issued another order similar to the January 14, 2009 order but adding to the same that if a timely reply is filed the same will be heard on February 24, 2009 (Docket No. 109).

On February 13, 2009, Creditor filed a motion in the Spanish language informing the court that Mrs. Vargas handed him a notification on January 17, 2009 regarding the platform that was in his possession and which the debtors wanted him to turn over to the estate. In this motion, Creditor mentions that he did not receive notification of a prior motion (Docket No. 118). Also, in this same motion Creditor alleges that during the month of June 2008 he notified the Bankruptcy Court during the hearing that in his parcel of land he has a platform, a mack truck and a "tumba" due to a pre-petition agreement he had reached with Mr. Soto in which such equipment constituted the source of payment for the monies owed to him ("Desde el mes de junio de 2008 el tribunal de quiebra en la vista que se celebro, le notifique que tengo la plataforma, que tenia un mack truck y una tumba que estaban en mi solar debido a que el me debe dinero y yo tenia los equipos como fuente de pago a razon de un acuerdo que habiamos llegado, esto antes de que el Sr. Soto se diera a Quiebra" (Docket No. 118). Thereafter, Creditor filed several motions (Docket Nos. 119, 120 and 124) but the same will not be discussed since they address tangential issues which are irrelevant to the issue at hand. On February 20, 2009, Debtor in Possession replied to the motions filed by Creditor and reaffirmed its position that the red 45 feet long platform is property of the estate and as such Creditor must turn over the same to the estate (Docket No. 122). In said reply, Debtor in Possession referenced two (2) sworn statements, but only attached one (1). However, on the same date Debtor in Possession filed the second sworn statement (Docket No. 123). The first sworn statement is from Raúl Mercado Rodríguez attesting the following: (i) that on February 23, 2002 he sold a "Fryhof" platform to Debtor in Possession for the agreed-upon price of $5,000.00; (ii) Debtor in Possession paid this amount with check number 1682 which corresponded to account number 084031514 held with Banco Popular de

3

Puerto Rico; and (iii) the transfer of title was never effectuated because the platform would be used internally in the hardware store of Debtor in Possession. The second sworn statement is from Gilberto Benítez Reyes attesting the following: (i) that on January 16, 2009 he called Juan Amador to telephone number 787-675-1070 to inform him that he had to turn over the 45 feet long platform (8 wheels) and that his response was that, "he will not do so;" and (ii) that Juan Amador also informed him that Luis Soto Ríos owes him money and that he will not surrender the property unless he is paid. Debtor in Possession alleges that, "[i]n the aforementioned motions Mr. Juan Amador admits that he has the property and will not delivered it to its proper owner, because Mr Juan Amador alleges that the debtor owes him monies. These motions can not be interpreted in any other way that as an admission by Mr. Juan Amador that he is willfully violating the automatic stay" (Docket No. 122, paragraphs 14-15). In this same reply, Debtor in Possession reaffirms its position that Creditor is willfully violating the automatic stay pursuant to 11 U.S.C. §362(a)(3) and 362(a)(5) and as such, Creditor should be subject to the imposition of costs, attorneys' fees and punitive damages in accordance with 11 U.S.C. §362(k)(1). Debtor in Possession also prays that Creditor be held in contempt.

On February 24, 2009 a hearing was held based on a court order (Docket No. 109) for Creditor to show cause as to why he should not be held in contempt nor sanctioned by this court for failure to turn over estate property that was sold to Gilberto Benítez Reyes at a public sale. During the pendency of this hearing the court on due process grounds granted Creditor twenty (20) days to retain counsel and file a written reply to the motions and orders regarding the return of property to the estate (Docket No. 125). The due process grounds, namely consisted of the following; (i) the court orders directing the turnover of property (Dockets No. 107 and 109) were entered during the time (sixty day period) that Creditor was given to retain new counsel (Docket No. 81) and the same were not notified to his address.

After the allowed twenty (20) day period had elapsed for Creditor to respond to the orders and motions with respect to the turnover of property of the estate, Debtor in Possession on March 17, 2009 filed a motion moving the court to submit the following rulings: (i) enter a contempt order against the Creditor since the same failed to obtain counsel and reply to the orders and motions

regarding the turnover of property to the estate; (ii) enter a writ of execution to enforce the turnover of property previously requested; and (iii) award Debtor in Possession costs, attorneys' fees in an amount not less than $5,000.00 (Docket No. 138).

On March 27, 2009 Creditor filed a motion requesting an extension of thirty (30) days to answer Debtor in Possession's motions for turnover of property and forty-five days (45) to appear before court (Docket No. 144). Debtor in Possession on March 27, 2009 filed a motion objecting to Creditor's request on the grounds that Creditor's failure to reply to the motions and court orders regarding the turnover of property fails to satisfy the standard of excusable neglect under Fed. R. Bankr. P. 9006(b)(1) (Docket No. 145). Creditor's motion for an extension of time was denied by the court at the March 31, 2009 evidentiary hearing (Docket No. 147).

An evidentiary hearing was held on March 31, 2009 to determine the following issues: (i) the rightful ownership and/or title of the 45 feet long red Fruehauf platform (8 wheels); (ii) whether Creditor violated the automatic stay by exercising control over property of the estate; and (iii) whether Creditor should be held in contempt for violating this court's order (Docket Nos. 107 and 109). The court after considering the testimony of four (4) witnesses (including Debtor in Possession Luis Soto Ríos and Creditor) and perusing through six (6) exhibits found by a preponderance of the evidence that the 45 feet long red Fruehauf platform, which at the time of this evidentiary hearing was held by the Creditor, is property of the estate and the same must be turned over within 24 hours to Gilberto Benítez (who purchased said platform at a public sale held on December 6, 2008). The court further ordered that failure to comply with this order would result in sanctions of $100.00 per day (Docket No. 156, pg. 128). Creditor filed a motion informing the court that on April 1, 2009 he turned over the 45 feet long red Fruehauf platform to Gilberto Benítez Reyes (Docket No. 148). The court notes that Creditor has filed a motion stating that he does not object confirmation of the Chapter 11 plan (Docket No. 190).

The court welcomed the Creditor and Debtor in Possession to file post hearing findings, proposed findings and conclusions of law within 30 days regarding the issues of violation of the automatic stay and whether Creditor should be held in contempt for violating this court's order. Debtor in Possession was the only party that submitted proposed findings of facts and conclusions

of law on May 13, 2009 (Docket No. 157).

<u>Applicable Law and Analysis</u>

*Violation of the Automatic Stay & Statutory Remedies*

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. <u>Soares v. Brockton Credit Union</u> (<u>In re Soares</u>), 107 F. 3d 969, 971 (1st Cir. 1997). The automatic stay is extremely broad in scope and "applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶362.03 (15th ed. 2009). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property." <u>Id</u>. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. <u>See</u> <u>In re Soares</u>, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." <u>In re Soares,</u> 107 F. 3d. at 975-976.

Section 362(a)(3) specifically prohibits any action by any entity "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3). Once the petition has been filed, the trustee or debtor in possession takes control of all property to maintain any going concern value and assure an equitable distribution amongst creditors of the estate. Alan N. Resnick & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶362.03[5] (15th ed. 2009). "This requires that no entity seek to interfere with these tasks by taking possession of or exercising control over property of the estate. It also requires that no entity grab non-estate property from the estate without court supervision that comes from a stay relief proceeding." <u>Id</u>. Property of the estate is broadly defined as encompassing any property to which the estate has some right. See 11 U.S.C. §541; <u>United States v. Whiting Pools, Inc.,</u> 462 U.S. 198, 204, 76 L. Ed. 2d 515, 103 s. Ct. 2309 (1983)("Congress intended a broad range of property to be included in the estate").

Section 362(k)(1) allows an individual to recover actual damages, costs and attorneys' fees, and in appropriate circumstances punitive damages when he or she is injured by a willful violation

of the automatic stay. See 11 U.S.C. §362(k)(1). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under §362(h) is met if there is knowledge of the stay and if the Defendant intended the actions which constituted the violation."[1] Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d 265, 269 (1st Cir. 1994). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorneys' fees be mandatory upon a finding of a willful violation of the stay." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 405 footnote 9 (B.A.P. 1st Cir. 2004) (quoting Ramirez v. Fustelier (In re Ramirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)); See In re Atamian, 344 B.R. 200, 205 (Bankr. D. Mass. 2006); Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 536-537 (Bankr. D. Mass. 2005). Moreover, a good faith belief in a right to certain property is irrelevant in determining the willfulness in an automatic stay violation. Fleet Mortg. Group, Inc. v. Kaneb, 196 F. 3d at 268-269. The burden is on the debtor to prove by a preponderance of the evidence that he suffered damages as a consequence of the violation of the automatic stay. See In re Heghmann, 316 B.R. at 404-405. Under Section 362(k)(1) of the Bankruptcy Code actual damages should only be awarded if there is concrete evidence which supports with reasonable certainty the amount of the award. Id. at 405.

The court on the March 31, 2009 evidentiary hearing held by a preponderance of the evidence that the 45 feet long red Freuhauf platform at the time of the filing of the petition was property of the estate. At this evidentiary hearing, Jorge Pérez LaFuente, Debtor in Possession's accountant, testified that he performed a physical inventory approximately at the beginning of April 2008 of Debtor in Possession's property (Docket No. 156, pgs. 27-28, 37-38). The property listed in the physical inventory included the inventory of the machinery, equipment and inventory located in the hardware store in Quebradillas (specifically in the yard of the hardware store) (Docket No. 156, pgs. 28-29). Jorge Pérez LaFuente further testified that at the time he took the physical inventory the only platform he saw on the Debtor in Possession's premises was the 45 feet long red Freuhauf platform (8 wheels), but that he mistakenly wrote in the physical inventory equipment report that the platform was 95 feet

---

[1]Section 362(k)(1) was previously codified as subsection 362(h) of the Bankruptcy Code.

instead of 45 feet long (Docket No. 156, pgs. 31-32, 116-117). At this juncture, it is unbeknownst to the court exactly when (at least since June of 2008 according to Docket No. 118) and how the Creditor came to have possession of the 45 feet long red Freuhauf platform. Creditor has admitted on multiple occasions that he is in possession of the 45 feet long red platform (Docket Nos. 137, pgs. 6-7; Docket No. 156, pgs. 92, 104; Docket No. 118) in consideration for (in exchange) monies that Debtor in Possession allegedly owed him.

After considering all the evidence presented at the March 31, 2009 hearing, this court concludes that Creditor wilfully violated the automatic stay pursuant to 11 U.S.C. §362(a)(3) since he obtained possession and exercised control post-petition of the 45 feet long red Freuhauf platform, which was property of the estate. The record clearly shows that Creditor had knowledge that Debtor in Possession had filed for bankruptcy, given that the June 2, 2008 notice for continuance of the 341 creditor's meeting for June 23, 2008, listed Creditor in the mailing matrix with the following address: Carr 2, 6429 PMB 151, Quebradillas, PR 00678 (Docket No. 24). Furthermore, the June 23, 2008 minutes of meeting of creditors evidences that Creditor or a party representing Creditor (name of the same is not very legible) was present at the June 23, 2008 creditors' meeting (Docket No. 35, p. 3). The record also shows that Creditor was represented by Attorney Quiñones for the period of August 1, 2008 through December 1, 2008 (Docket Nos. 50, 80 & 81).

This court, after finding that the Creditor wilfully violated the automatic stay, concludes that the Debtor in Possession is entitled to recover actual damages, including costs and attorneys' fees pursuant to Section 362(k)(1) of the Bankruptcy Code. Debtor in Possession has prayed the court for, "... the award of attorney fees in the amount of $5,000.00, plus costs and expenses and for any other relief as is just and proper" (Docket No. 138, p. 2) Debtor in Possession shall provide the court with documentary evidence which supports the costs and attorneys' fees associated with the efforts expended in obtaining Creditor to turn over estate property (45 feet long red Freuhauf platform). Debtor in Possession has not submitted to the court any concrete evidence supporting the award of a definite amount of actual damages other than costs and attorneys' fees for violation of the automatic stay.

*Civil Contempt Standard*

Bankruptcy courts are vested with contempt power. See Fernos- Lopez v. U.S. Dist. Ct., 599 F. 2d 1087, 1090 (1st Cir. 1979); Eck v. Dodge Chem. Co. (In re Power Recovery Systems), 950 F. 2d 798, 802 (1st Cir. 1991). "Since 1989 this court has opined that it has civil contempt power over matters under its jurisdiction and has broad powers under section 105(a) to sanction and punish contempt for violations of the automatic stay provisions of 11 U.S.C. §362(a)." In re El Comandante Mgmt. Co., LLC, 358 B.R. 1, 11(Bankr. D. P.R. 2006) referencing In re Cordova Gonzalez, 99 B.R. 188, 191 (Bankr. D. P.R. 1989). The bankruptcy court through Section 105(a) of the Bankruptcy Code is afforded in necessary or appropriate circumstances broad authority to exercise its equitable powers to ensure compliance with its own orders. Fatsis v. Braunstein, 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009); See Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F. 3d 34, 43 (1st Cir. 2008). However, it is important to note that the court should use its civil contempt power "only to control cases and proceedings in the most egregious of circumstances." In re Cordova Gonzalez, 99 B.R. at 191. Furthermore, Civil contempt must be proved by clear and convincing evidence by the claimant. In re Parker, 334 B.R. at 538 citing Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D. Mass. 2005); See Fatsis v. Braunstein, 405 B.R. at 7. "Federal courts are empowered to issue civil contempt sanctions to 'protect[] the due and orderly administration of justice and... maintain[] the authority and dignity of the court'" Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F. 3d 63, 76 (1st Cir. 2002) citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980). A claimant alleging civil contempt of a court order must prove that the terms of the court order satisfy the "clear and unambiguous" standard, which applies to the language of the relevant court order, not to its effectiveness." Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F. 3d at 76 referencing Star Fin. Servs. v. Aastar Mortg Corp., 89 F. 3d 5, 13 (1st Cir. 1996); See Fatsis v. Braunstein, 405 B.R. at 7. The test for the "clear and unambiguous standard" is whether the contemnor is, "able to ascertain from the four corners of the order precisely what acts are forbidden." Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F. 3d at 76 citing Gilday v. Dubois, 124 F. 3d 277, 282 (1st Cir. 1997).

In civil contempt proceedings remedial sanctions are utilized as a mechanism to compel the contemnor to abide by the court's order or, where appropriate, to compensate the harmed party for losses sustained. In re Power Recovery Systems, 950 F. 2d at 802. Moreover, in a civil contempt

9

proceeding the "make-whole relief is a commonplace sanction for civil contempt" as well as attorneys' fees and costs. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F. 3d at 78 referencing G&C Merriam Co. v. Webster Dictionary Co., 639 F. 2d 29, 41 (1st Cir. 1980). Most importantly, a reasonable relationship based on competent evidence must exist between the amount of the monetary "make-whole relief" remedial sanction and the actual losses sustained by the injured claimant. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F. 3d at 78 referencing United States v. United Mine Workers, 330 U.S.258, 304, 91 L. Ed. 884, 67 S. Ct. 677 (1947)("The amount of an award of make-whole relief, like the amount of any monetary sanction that is remedial in nature, cannot be plucked out of thin air. The amount of such a sanction must be established by competent evidence, and must bear a reasonable relationship to the actual losses sustained by the injured party.")

In the instant case, Debtor in Possession requested Creditor be held in contempt for wilfully violating the automatic stay and failing to abide by this court's orders. This court held by a preponderance of the evidence that Debtor in Possession was the rightful owner of the 45 feet long red Freuhauf platform. Only after this finding was the court able to conclude herein, that the Creditor wilfully violated the automatic stay by obtaining possession and exercising control of estate property. Thus, the court's finding that Debtor in Possession had wilfully violated is based on the preponderance of the evidence, namely the testimonies that were presented at the evidentiary hearing, and not by clear and convincing evidence which is necessary for establishing civil contempt. Creditor failed to abide by the February 24, 2009 order by which the court granted the same twenty (20) days to retain counsel and file a written reply to the motions and orders regarding the return of property of the estate (Docket No. 125). In fact, it was not until March 27, 2009 that Creditor's new attorney filed a notice of appearance with the court (Docket No. 143) and on the same date requested an extension of time (Docket No. 144) to answer Debtor in Possessions' motions regarding the turn over of estate property. The court finds that Creditor, a lay person with no knowledge of the bankruptcy court system did in fact failed to abide by a court order. However, this court does not find that Creditor acted in an egregious manner, and as such does not find him in civil contempt of a court order.

Moreover, this court finds that Debtor in Possession's request, "...that sanctions in the amount

10

of $5,000.00 be imposed on Mr. Juan Amador for taking this Court's time and our client's time in pursuing something such as unfounded as of now as it stands." (Docket No. 156, pgs. 6-7) is unsubstantiated since Debtor in Possession failed to present competent evidence to this court establishing the actual losses it allegedly sustained.

Conclusion

The court holds that Creditor willfully violated the automatic stay pursuant to Section 362(a)(3) of the Bankruptcy Code. Thus, Debtor in Possession is entitled to recover costs and attorneys' fees in accordance with Section 362(k)(1). Debtor in Possession shall provide the court within ten (10) days documentary evidence regarding the costs and attorneys' fees associated with the efforts expended in obtaining Creditor to turn over estate property. Furthermore, the court holds that Creditor is not in contempt of this court's orders.

SO ORDERED.

In San Juan, Puerto Rico, this 21st day of September 2009

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge